IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| DEBORAH WARE, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> HOME WIRELESS, INC., D/B/A HOME TELECOM LLC. <br><br> Defendant. | **HOME TELECOM'S NOTICE OF REMOVAL** <br><br> Case No. 2:25-cv-04570-DCN |

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1332(d), 1441, and 1446 Defendant Home Wireless, Inc., d/b/a Home Telecom LLC ("Home Telecom") hereby removes this putative class action filed by Plaintiff Deborah Ware ("Plaintiff") in the Court of Common Pleas Ninth Judicial District, County of Berkley, Case No. 2025CP0801395 (the "State Court Action") to the United States District Court for South Carolina, Charleston Division.

**JURISDICTION AND VENUE**

1.     This Court has original subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332, and removal is proper under the Class Action Fairness Act of 2005 ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d).

2.     This Court is in the judicial district and division embracing the place where the State Court Action was brought and is pending. *See* 28 U.S.C. § 93(a)(1). Thus, this Court is the proper district court to which this case should be removed. 28 U.S.C. §§ 1441(a) and 1446(a). Plaintiff filed her Complaint as a putative class action. *See* Compl. ¶ 4. A true and correct copy of the Complaint is attached to this Notice of Removal as **Exhibit A**.

## NATURE AND TIMELINESS OF REMOVED ACTION

3.      On April 25, 2025, Plaintiff, on behalf of herself and, purportedly, on behalf of all others similarly situated, filed a "Class Action Complaint" ("Complaint") against Home Telecom in the Court of Common Pleas, Ninth Judicial District, South Carolina, County of Berkley, Case No. 2025CP0801395. A true and correct copy of the Complaint in the Court of Common Pleas Action is appended hereto as **Exhibit A**.

4.      Plaintiff alleges that on March 17, 2025, Home Telecom discovered that it was the victim of a data security incident (the "Incident") in which an unauthorized third party gained access to certain "personally identifiable information ("PII" or "Private Information") of Plaintiff and other current and former customers" of Home Telecom. Compl. ¶ 1.

5.      Plaintiff alleges that she received notice of the Incident from Home Telecom, dated April 14, 2025. See *id*. ¶ 16.

6.      Plaintiff alleges that the Incident occurred due to Home Telecom's "failure to implement adequate and reasonable cyber-security procedures and protocols necessary to protect individuals Private Information." *Id*. ¶ 3.

7.      Plaintiff alleges that she, and a class of similarly situated individuals were injured as a result of the Incident. *See id*. at ¶ 10-11. While Plaintiff does not allege any actual injury, she contends she suffered or will suffer an injury based on (1) an increased risk of future identity theft (*id*. ¶ 10); (2) a diminution in the value of her PII (*id*. ¶ 87); and (3) mitigation damages (*id*. ¶¶ 11). *See also*, *id*. ¶¶ 83-89.

8.      On behalf of herself, and purportedly on behalf of a class defined as "[a]ll persons whose Private Information was compromised because of the 2024 Data Breach (the "Class")"

(Compl. at ¶ 94), Plaintiff asserts four causes of action: (i) negligence; (ii) breach of implied contract; (iii) breach of fiduciary duty, and (iv) unjust enrichment. *See id.* ¶¶ 14 & 105-153.

9. This Notice of Removal is timely because Home Telecom filed it within thirty days of being served with the Complaint. Plaintiff served her Complaint on April 25, 2025. *See* U.S.C. § 1446(b) (notice of removal shall be filed within 30 days of service); *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 562 U.S. 344, 347-48 (1999) (removal period begins when defendant is served with complaint). Plaintiff served her Complaint on April 25, 2025.

10. In accordance with 28 U.S.C. § 1446(a), all process, pleadings, and orders that have been filed and served in the Superior Court Action are attached to this Notice as **Exhibit A**.

## CAFA JURISDICITON

11. <u>Basis of Original Jurisdiction</u>: This Court has original jurisdiction over this action under CAFA. Section 1332(d) provides that a district court shall have original jurisdiction over a class action with 100 or more putative class members, in which the matter in controversy, in the aggregate, exceeds the sum or value of $5 million. Section 1332(d) further provides that, for CAFA to apply, a member of the putative class must be a citizen of a state different from any defendant.

12. As set forth further below, pursuant to sections 1332(d) and 1441(a), Defendant may remove the State Court Action to federal court under CAFA because: (1) this action is pled as a class action; (2) the putative class includes more than 100 members; (3) unnamed members of the putative class are citizens of a state different than that of Defendant; and (4) the matter in controversy, in the aggregate, exceeds the sum or value of $5 million exclusive of interest and costs.

## THE ACTION IS PLED AS A CLASS ACTION

13. CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative person as a class action." 28 U.S.C. § 1332(d)(1)(B)

14. In her Complaint, Plaintiff alleges that she "brings this action on behalf of herself and on behalf of all other persons similarly situated." Compl. ¶ 93.

15. As Plaintiff alleges, she purports to bring this action on behalf of "[a]ll persons whose Private Information was compromised because of the 2024 Data Breach (the "Class"). *Id.* ¶ 94.

16. Because South Carolina Rule of Civil Procedure 23 is substantially similar to class actions brought pursuant to Federal Rule of Civil Procedure 23, the first CAFA requirement is satisfied.

## THE PUTATIVE CLASS INCLUDES AT LEAST 100 MEMBERS

17. Plaintiff alleges that while the Members of the Class are so numerous that joinder of all of them in a single proceeding is impracticable." Plaintiff further alleges that while the exact number of class members is unknown to plaintiff now, "Defendant has reported to the South Carolina Department of Consumer Affairs that the number includes 55,763 individuals." *Id.* ¶ 96.

18. In related actions filed on April 25, 2025, in the Court of Common Pleas, Ninth Judicial District, South Carolina, County of Berkley three other related actions captioned *Briana Acuna et al v. Home Telecom, Inc.*, Case No. 2025CP0801370, *Cara Haenel et al v. Home Wireless, Inc. d/b/a Home Telecom, Inc.*, Case No. 2025CP0801356, and *Michael Daniell et al v. Home Wireless, Inc. d/b/a Home Telecom*, Case No. 2025CP0801297 alleging similar class-wide

claims against Home Telecom arising out of the same Incident. The *Acuna* action also alleges that at least "55,763 South Carolinians" were impacted by the Incident. *Acuna Compl.* ¶ 7.

19. Thus, the putative class, as defined by Plaintiff, includes more than the statutorily required minimum of 100 members, and as such, the second CAFA requirement is satisfied.

### MINIMAL DIVERSITY OF CITIZENSHIP EXISTS

20. Under 28 U.S.C. § 1332(d)(2)(A), "the district court shall have original jurisdiction" over a "class in which . . . any [named or unnamed] member of the class of plaintiffs is a citizen of a State different from any defendant."

21. <u>Defendant's Citizenship.</u> Under 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of every State … by which it has been incorporated and of the State … where it has its principal place of business." It is well established that "[a] corporation is deemed a citizen of any state by which it has been incorporated and a citizen of the state where it has its principal place of business." *Russo v. Eastwood Constr. Partners, LLC*, No. 2:22-CV-1686-DCN, 2023 WL 2386453, at *13 (D.S.C. Mar. 7, 2023) (citing *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010) (citing 28 U.S.C. § 1332(c)(1)). Plaintiff alleges that Home Telecom is "a domestic corporation as defined by South Carolina law[.]" Compl. ¶ 14. Home Telecom is organized under the laws of South Carolina, with its principle of business in South Carolina. Thus, for diversity purposes, Home Telecom is a citizen of South Carolina.

22. <u>Plaintiff's Citizenship</u>. For diversity purposes, a party's citizenship is determined by their domicile. Plaintiff alleges that she is a citizen of South Carolina. Compl. ¶ 15. Thus, for purposes of this Notice of Removal, Plaintiff is a citizen of South Carolina.

23. <u>Unnamed Class Members' Citizenship</u>. To establish minimal diversity, the Court should consider the citizenship of all class members, including putative class members, both

named and unnamed. *See* 28 U.S.C. § 1332(d)(1)(D) ("[T]he term 'class members' means the persons (name or unnamed) who fall within the definition of the proposed . . .class"). Thus, minimal diversity under CAFA only requires that "any member of a class of plaintiffs is a citizen of a State different from any defendant." *Priselac v. Chemours Co.*, 561 F. Supp. 3d 562 (E.D.N.C. 2021) (citing 28 U.S.C. § 1332(d)). *See, e.g., Axel Johnson, Inc. v. Carroll Carolina Oil Co., Inc.*, 145 F.3d 660, 663 (4th Cir.1998) ("[S]tate citizenship for purposes of diversity jurisdiction depends not on residence, but on national citizenship and domicile[.]") (citation omitted).

24.     Plaintiff alleges that her purported class is comprised of "[a]ll persons whose Private Information was compromised because of the 2024 Data Breach (the "Class")." Compl. ¶ 94. Thus, by the face of Plaintiff's complaint, she has failed to show that any putative class member is a *citizen* of South Carolina. Indeed, Plaintiff fails to limit the proposed class to only South Carolina citizens, she can allege only that Home Telecom "has reported to the South Carolina Department of Consumer Affairs that the Data Breached affected 55,763 individuals." *Id*. ¶ 2. *See Fernandes v. D.R. Horton, Inc.*, No. 2:24-CV-03928-DCN, 2025 WL 1008079 (D.S.C. Apr. 4, 2025) (explaining that, "[i]n cases where plaintiffs do not base citizenship on the class definition, they must provide evidence of the class members' state of residence as well as evidence showing their intent to remain in that state"); *Axel Johnson, Inc.*, 145 F.3d at 663 (concluding that evidence of residency was insufficient to show citizenship, noting that "[a]s the Supreme Court has consistently held, however, state citizenship for purposes of diversity jurisdiction depends not on residence, but on national citizenship and domicile."). Even if Plaintiff had alleged that her purported class is comprised of South Carolina citizens (which she does not), the putative class Plaintiff seeks to represent includes no temporal limitation on "South Carolina residents" or "citizens." Put another way, Plaintiff does not make clear in her class definition whether the

proposed class includes individuals who were residents of South Carolina when they provided their information to Home Telecom. As such, absent any temporal limitation whatsoever, it is more likely than not that Plaintiff's class captures individuals who may have been South Carolina residents at some point in time but no longer are.

25.     As described above, Plaintiff has provided no temporal limitation on the "residency," let alone citizenship, required for inclusion in her class definition, or any other limitation to clearly limit the class to only "current" South Carolina residents (or, as required, citizens). *See, e.g.*, *Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1157 (11th Cir. 2021) ("But the definition does not limit the class to *current* Florida residents. Rather, it defines the class as persons who 'resided' in the Florida facilities at some point during a four-year period. Thus, the class definition on its face encompasses class members who currently reside in the Florida facilities and those who resided in the facilities during the relevant four-year period, but have since moved to another state. Because citizenship for purposes of CAFA jurisdiction is based on *current residency* and an intent to remain, the class definition does not aid the class in establishing either prong of the citizenship requirement."); *Arbuckle Mt. Ranch of Tex., Inc. v. Chesapeake Energy Corp.,* 810 F.3d 335, 343 (5th Cir. 2016) (exercising CAFA jurisdiction because the class definition did not clearly limit class membership of gas and mineral "owners" to current Texas citizens); *Anderson v. Davis Wright Tremain LLP*, Case No. 3:20-cv-01194-AC, 2021 WL 7184127, at *5 (D. Ore. July 14, 2021) (denying motion to remand and declining to read a temporal limitation into class definition which stated "Class Members are . . . Oregon citizen[s]" and noting that the plaintiff's definition lacked a temporal term like "currently"); *In re Hannaford Bros Co. Customer Data Sec. Breach Litig.*, 564 F.3d 75, 77 (1st Cir. 2009) (defining class to explicitly exclude "any persons and entities who [wer]e not citizens of the State of Florida").

26. In short, Plaintiff's proposed class includes residents of South Carolina, regardless of whether those persons were current or former South Carolina residents or citizens. Therefore, former South Carolina citizens whose "Private Information" was provided to Home Telecom who moved to another state after the filing of the Complaint but prior to removal, are members of the class, but citizens of their new states for purposes of minimal diversity under CAFA. Likewise, individuals who may have moved to South Carolina post-removal are also part of the putative class and are likely considered South Carolina citizens (or here, residents) for the purpose of minimal diversity. Because Plaintiff's Complaint fails to clearly limit putative class membership to current South Carolina residents, or citizens, or in fact, to limit the putative class membership to South Carolina residents or citizens at all, sufficient to destroy diversity, it is more likely than not that at least one individual who received notice of the Incident is a citizen of a state other than South Carolina.

27. Moreover, Home Telecom mailed notice of the underlying data security incident to individuals or businesses with mailing addresses located in all 50 states, which further demonstrates that at least one putative class member likely resides in a state other than South Carolina and is thus diverse from Home Telecom.

28. Minimal diversity of citizenship is established under CAFA because some unnamed class members are not citizens of South Carolina, and as such, have diversity of citizenship with Home Telecom and Plaintiff.

**THE AMOUNT IN CONTROVERSY EXCEEDS THE CAFA THRESHOLD**

29. Under CAFA, the amount in controversy must exceed $5 million, exclusive of interests and costs. 28 U.S.C. § 1332(d)(2). To determine the jurisdictional minimum, the claims

of the individual class members shall be aggregated to determine whether this threshold is met. *See Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588 (2013).

30. Where, as here, a plaintiff does not specify the damages amount sought, the removing defendant must prove by a preponderance of the evidence that the jurisdictional amount in controversy is satisfied. 28 U.S.C. § 1446(c)(2)(B). The United States Supreme Court has held that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" to meet the amount-in-controversy requirement. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

31. Even where a specific amount in controversy is not pled, under CAFA, the claims of the individual class members must be aggregated to determine whether the matter in controversy exceeds the $5 million jurisdictional threshold. 28 U.S.C. § 1332 (d)(2); s*ee Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588. This aggregation includes both named and unnamed class members who fall within the definition of the proposed or certified class. See *Chavis v. Fid. Warranty Servs., Inc.*, 415 F. Supp. 2d 620, 627 (D.S.C. 2006) (explaining that if the federal court is uncertain about whether the aggregated claims exceed $5,000,000, it should err in favor of exercising jurisdiction.).

32. As demonstrated below, the allegations in the Complaint make it more likely than not that the amount in controversy under CAFA exceeds $5 million.[1]

33. Plaintiff's Complaint contains no allegations that would support or suggest the amount in actual damages to which she and any member of the putative class are allegedly entitled for Home Telecom's alleged negligence. Nevertheless, Plaintiff's requested relief supports a finding that the amount in controversy, in the aggregate, exceeds the $5 million amount-in-

---

[1] The amounts set forth in this Notice of Removal are solely for purposes of establishing that the amount in controversy exceeds the $5 million threshold and are not intended to support, and cannot be construed as an admission, that Plaintiff can state a claim or is entitled to damages in any amount. Defendant denies liability, denies Plaintiff is entitled to recover any amount, and denies that a class can be properly certified in this action.

controversy threshold. For example, even if not specifically requested in her Complaint, Plaintiff and putative class members could still recover any and all damages under South Carolina law to which they are legally entitled, including potentially general damages, such as compensatory damages, and/or punitive damages if they succeed on their claims.

34. Credit Monitoring Costs. In data incident cases involving similar allegations, courts routinely hold that the costs of providing credit monitoring and identity theft protection services are properly included in the amount in controversy for purposes of CAFA's jurisdictional requirements. *See, e. g., Caudle v. Towers, Perrin, Forster & Crosby, Inc.*, 580 F. Supp. 2d 273, 278 (S.D.N.Y. 2008) (concluding that the amount of "credit monitoring costs for [plaintiff] and for the putative class for an indeterminate period beyond one year" "readily exceed[s] $5 million, exclusive of interests and costs"); *see also Porras v. Sprouts Farmers Mkt.*, LLC, No. C16-1005, 2016 WL 405 1265, at *3 (C.D. Cal. July 25, 2016) (three years of credit monitoring at only $15.95 per month for class of only 8,719 exceeded $5 million amount in controversy); *see also Abdale v. N. Shore-Long Island Jewish Health SYS., Inc.*, No. C13-1238, 2014 WL 2945741, at *6 (E.D.N.Y. June 30, 2014) (considering credit monitoring in amount in controversy exceeding $5 million); see also *Fielder v. Penn Station, Inc.*, No. C12-2166, 2013 WL 1869618, at *2 (N.D. Ohio May 3, 2013) (CAFA jurisdictional limit exceeded with just two years of credit monitoring alone). Here, Plaintiff pleads for "Defendant to pay for not less than ten years of credit monitoring services for Plaintiff and the Class." Compl. Prayer for Relief.

35. Three main identity-protection agencies—LifeLock, Equifax, and Experian— advertise monthly rates for three-bureau credit-monitoring services for one adult ranging from

10

$19.95 to $24.99 per person per month.[2] For example, LifeLock offers a product, titled Ultimate Plus, that provides credit monitoring with up to $3,000,000 in "stolen funds reimbursement" for $19.99 per month.[3] Equifax also offers a base product, titled Equifax Complete, that provides automatic fraud alerts, the Equifax credit report lock feature, identity restoration, and up to $500,000 for identity theft insurance for $9.95 per month.[4]

36.     Taking the least expensive product—Equifax's $9.99 per month product—and multiplying the cost of just five years of the service for all class members ($9.99/month x 60 months x 55,763 class members), the total cost would be $33,424,342.20. Taking LifeLock's Ultimate Plus plan and applying the same calculation ($19.99/month x 60 months x 55,763 class members), the total cost would be $66,882,142.20.

37.     <u>Private Information</u>. Plaintiff alleges that because of Home Telecom's conduct, in failing prevent and timely detect the Data Breach, Plaintiff and Class Members' "have suffered and will continue to suffer damages" including, "diminution in value of their PII, out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud, and lost opportunity costs and lost wages associated with the time and effort expended." *Id*.

---

[2] https://www.equifax.com/personal/products/credit/monitoring-product-comparison/ (last visited May 23, 2025); https://www.experian.com/protection/compare-identity-theft-products/ (last visited May 23, 2025); https://us.norton.com/store?expid=PS-LLBRANDEDGEN&promocode=BPSOFFER&nortoncountry=us&om_sem_cid=hho_sem_sy:~en-us_nor_n36_sch_brn_nau_nfr_adw_dtp_low:nort_lifelock~c_kw0000686434&cq_src=google_ads&cq_cmp=1967423177&cq_net=g&gad_source=1&gclid=EAIaIQobChMIoKGM582jigMVxxWtBh1rcBvYEAAYASAAEgJGlvD_BwE&gclsrc=aw.ds (last visited May 23, 2025).
[3] *See* https://lifelock.norton.com/?%20srsltid=A%20fmBOop8%20V%20DK%20Wk2spleGQ234u479LoZo2QTQGsN9DRm-I-n3R30ZZN-cz (last visited May 23, 2025).
[4] https://www.equifax.com/personal/products/value-product-comparison/ (last visited May 23, 2025).

11

at ¶ 48. Plaintiff also alleges that, "stolen PII can be worth up to $1,000.00[.]" *Id*. at ¶ 49. Taking Plaintiff's own allegations at face value and applying to them to the number of notified addresses, damages could theoretically eclipse $55,763,000 (55,763 addresses x $1000).

38.     <u>Injunctive Relief</u>. Plaintiff seeks injunctive relief requiring "Defendant to pay for not less than ten years of credit monitoring services for Plaintiff and the Class" as well as other untold changes to Home Telecom's cybersecurity practices. Compl. Prayer for Relief. "The Fourth Circuit requires courts to consider the value of injunctive relief as part of the amount in controversy. *Auto Money N. LLC v. Walters*, 737 F. Supp. 3d 330, 342 (D.S.C. 2024). Specifically, the Fourth Circuit follows the "either-party rule," which means that the amount in controversy is measured by the value of the object of the litigation, considering either the benefit to the plaintiff or the cost to the defendant. *See id.* at 342. The court will consider whichever figure is larger: the benefit to the plaintiff or the cost to the defendant. *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 639 (4th Cir. 2010) (the court noting that the value of an injunction for amount in controversy purposes is ascertained by reference to the larger of two figures: the injunction's worth to the plaintiff or its cost to the defendant). Thus, the cost of injunctive relief, as requested by Plaintiff, would only further increase the aggregated amount in controversy.

39.     <u>Disgorgement Request</u>. Next, Plaintiff alleges unjust enrichment on behalf of herself and putative class members. Compl. ¶¶ 139-153. Under the claim, Plaintiff seeks to require Home Telecom to "disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that it unjustly received from them." *Id*. ¶ 153. Assuming Plaintiff and each of the 55,763 putative class members could demonstrate that Home Telecom prioritized "its own profits" over the requisite security essentially, that Plaintiff and putative class members

12

"overpaid" for Home Telecom's services, these damages would easily exceed the $5 million amount-in-controversy requirement under CAFA.

40. <u>Total Amount in Controversy</u>. As pled, the above alleged damages estimation exceeds the $5 million amount-in-controversy threshold as required under 28 U.S.C. § 1332(d)(2).

## **EXCEPTIONS TO CAFA JURISDICITON DO NOT APPLY**

41. Congress "enacted CAFA to curb perceived abuses of the class action device which, in the view of CAFA's proponents, had often been used to litigate multi-state or even national class actions in state courts." *Jackson v. Home Depot U.S.A., Inc.*, 880 F.3d 165, 168 (4th Cir. 2018); *Dominion Energy, Inc. v. City of Warren Police & Fire Ret. Sys.*, 928 F.3d 325, 329 (4th Cir. 2019) (citing *Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010) ("we are obliged to construe and apply CAFA's grant of federal court jurisdiction broadly, and to apply the three removal exceptions in a narrow fashion")); *see also* S. Rep. No. 109-14, at 43, 45 (2005) (explaining that CAFA's provisions granting federal court jurisdiction "should be read broadly," and that removal exceptions should be "narrowly construed"). This approach ensures that close questions are resolved in favor of removal to federal court, reflecting CAFA's intent to address perceived abuses of the class action device in state courts. *See Jackson*, 880 F.3d at 165.

42. Section 1332(d)(2)(A) of CAFA requires: (1) minimal diversity; (2) an amount in controversy greater than $5,000,000; and (3) a class action with at least 100 members. *Priselac*, 561 F. Supp. 3d at 569; 28 U.S.C. § 1332(d)(5)(B). "When the foregoing three criteria ... are satisfied, a defendant sued in a class action in a state court is presumptively entitled to remove the proceedings to federal court." *Dominion Energy, Inc. v. City of Warren Police & Fire Ret. Sys.*, 928 F.3d 325, 330 (4th Cir. 2019); *see* 28 U.S.C. § 1453(b).

43. The three exceptions relevant to CAFA jurisdiction are (1) the local controversy exception, (2) the home state exception, and (3) the discretionary remand exception. *See Quicken Loans Inc.*, 737 F.3d at 964; *see also* 28 U.S.C. § 1332(d)(3)-(4). The local controversy and home-state exceptions require the Court to decline jurisdiction if two-third (sixty-seven percent) or more of all proposed plaintiff classes in the aggregate and the primary defendant are citizens of the state where the class action was originally filed. 28 U.S.C § 1332(d)(4)(A)&(B); *See Quicken Loans Inc.*, 737 F.3d at 964; *see also Johnson v. Advance Am.*, 549 F.3d 932 (4th Cir. 2008).

44. Under any CAFA exceptions, it is the party seeking remand who must prove that one of CAFA's exceptions to removal applies. *Dominion Energy, Inc. v. City of Warren Police & Fire Ret. Sys.*, 928 F.3d 325, 336 (4th Cir. 2019). Any doubt about the applicability of the CAFA exceptions are resolved against the party seeking remand. *See id*. While it is Plaintiff's burden, neither Home Telecom nor Plaintiff can demonstrate that CAFA's mandatory local controversy exception or home state exception applies here.

45. Invoking the local controversy exception requires Plaintiff to prove, among other things, that "no other class action … asserting the same or similar factual allegations against any of the defendants" has been filed in the preceding three years. 28 U.S.C. § 1332(d)(4(A). The "other class action" clause has been interpreted to mean any other class action, state or federal, brought against any of the defendants included in the removed action. *See, e.g.*, *Lafalier v. State Farm Fire and Cas. Co.*, 391 Fed. App'x 732, 738 (10th Cir. 2010). As explained by the Third Circuit,

> In short, Congress wanted to ensure that defendants did not face copycat, or near copycat, suits in multiple forums and hence excluded from the local controversy exception cases where a defendant was named in multiple similar cases. It follows that the no other class action" factor must not be read too narrowly. **The 'inquiry is whether similar factual allegations have been made against the defendant in multiple class actions'—and hence they are facing separate, distinct lawsuits—**

14

> **without regard to the procedural posture of the earlier filed cases or whether the putative classes in the cases overlap, their claims arise from an identical event, or involve the same causes of action or legal theories**.
>
> *Vodenichar v. Halcon Energy Properties, Inc.*, 733 F.3d 497, 508–09 (3d Cir. 2013) (citing S. Rep. NO. 109-14 at 41)

(emphasis added). When "a controversy results in the filing of multiple class actions, it is a strong signal that those cases may not be of the variety that this exception is intended to address." S. Rep. 109-14, at 40.

46. On April 25, 2025; April 29, 2025; and May 7, 2025, three other related actions, captioned *Briana Acuna et al v. Home Telecom, Inc.*, Case No. 2025CP0801370, *Cara Haenel et al v. Home Wireless, Inc. d/b/a Home Telecom, Inc.*, Case No. 2025CP0801356, and *Michael Daniell et al v. Home Wireless, Inc. d/b/a Home Telecom*, Case No. 2025CP0801297 were filed in the Court of Common Pleas, Ninth Judicial District, State of South Carolina, County of Berkley arising out of the same facts set out in the instant Complaint. Each of these cases are also being removed to federal court.

47. There can be no dispute that similar factual allegations have been made against Home Telecom in other class action lawsuits.

48. Further, with more than 55,763 putative class members, there simply is no way to know who is a citizen of which state, much less determine that two-thirds or more are citizens of South Carolina, without speaking directly to each of those thousands of individuals.

49. Significantly, where Home Telecom mailed notice of the Incident is not proof of citizenship—notwithstanding that Home Telecom mailed notice to addresses in all 50 states. "Domicile requires physical presence, coupled with an intent to make the State a home." *Advance Am.*, 549 F.3d at 936 n. 2 (citing Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30,

*48, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989)).* Several factors have been used as evidence of intent to make a state a home including: "current residence, voting registration and voting practices, location of personal and real property, location of financial accounts, membership in unions and other associations, place of employment, driver's license and automobile registration, and tax payments." *Bowen v. Houser*, No. CA 3:10-02398-MBS, 2011 WL 380455, at *7 (D.S.C. Feb. 3, 2011) (citing *Preston v. Tenet Healthsystem Meorial Medical Center, Inc.,* 485 F.3d 793, 797–98 (5th Cir.2007) (in determining intent, district courts can consider "places where the litigant exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family.")). However, residency by itself is insufficient to establish citizenship. *Advance Am.,* 549 F.3d at 936 n. 2.

50. Instead, to establish citizenship sufficient for diversity purposes, "[d]omicile requires physical presence, coupled with an intent to make the State a home." *Advance Am.*, 549 F.3d at 936 n. 2 (citing *Mississippi Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 48, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989)). District courts in the Fourth Circuit have held that a party seeking remand under a CAFA exception must do more than set forth residency numbers. *See Craft v. S.C. State Plastering, LLC*, 2016 WL 11608327, at *4 (D.S.C. Sept. 8, 2016) (denying remand under local controversy exception because the plaintiff's evidence "that only 6.67% of the potential class members have a secondary residence" and "only 18.75% of the potential class members [were] assessed at the six percent tax ratio for non-owner-occupied homes" was insufficient to establish that class members were "both United States citizens and ... domiciled in South Carolina."); *Bowen*, 2011 WL 380455, at *8 (denying remand under local controversy

16

exception because although the "Plaintiffs have provided evidence that ... class members reside in South Carolina, ... residency is insufficient to establish domiciliary intent").

51. The discretionary exception to CAFA, which is often referred to "as the interest of justice" exception, also does not apply here. The discretionary exception, codified under section 1332(d)(3), provides the district court with the discretion to decline jurisdiction "over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed."

52. For the same reason that the Court cannot find that greater than two-thirds of the putative class are citizens of South Carolina without specific evidence of citizenship, it cannot find that greater than one-third of the putative class are South Carolina citizens.

## STATE COURT NOTICE

53. As required by 28 U.S.C. § 1446(d), Defendant is providing written notice of the filing of this Notice of Removal to Plaintiff's counsel and is filing a copy of this Notice of Removal with the Clerk of Court of Common Pleas, Ninth Judicial District, South Carolina, County of Berkley.

## RESERVATION OF RIGHTS AND DENIAL OF LIABILITY

54. Nothing in this Notice of Removal is intended to be, or should be construed as, an express or implied admission by Home Telecom of any fact alleged by Plaintiff; of the validity or merit of any of Plaintiff's claims and allegations; or as a limitation of any of Home Telecom's rights, claims, remedies, and defenses in connection with this action.

WHEREFORE, Home Telecom hereby removes this action from the Court of Common Pleas, Ninth Judicial District, South Carolina, County of Berkley to the United States District Court

for South Carolina, Charleston Division, so this Court may assume jurisdiction over the case as provided by law.

Dated: May 27, 2025                                        Respectfully submitted,

/s/ *Paul D. Harrill*
Paul Harrill, Bar No.
**Burr & Forman, LLP**
1221 Main Street, Suite 1800
Columbia, SC 29201
PHarrill@burr.com


Christopher A. Wiech (*pro hac vice* forthcoming)
**BAKER & HOSTETLER LLP**
1170 Peachtree St. NE
Atlanta, GA 30309
cwiech@bakerlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2025, a copy of the foregoing document was filed electronically with the Clerk of the Court using the Court's CM/ECF electronic filing system, which will send an electronic copy of this filing to all counsel of record.

    Neil P. Williams (SC Bar No. 104780)
**SIRI** & **GLIMST AD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: nwilliams@sirillp.com

Leigh Montgomery*
Texas Bar No. 24052214
**EKSM, LLP**
4200 Montrose Blvd., Suite 200
Houston, Texas 7706
Tel: (888) 350-3931
E: lmontgomery@eksm.com
E: service@eksm.com

**ATTORNEYS FOR PLAINTIFF AND PUTATIVE CLASS**
* *Pro Hae Vice* application to be submitted